IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FIFI T. JAMES,

      Plaintiff,

vs.                                        CASE NO. 1:07cv9-MP/WCS

MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security,**

      Defendant.

                                      /

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Fifi T. James, applied for disability insurance benefits and supplemental security income benefits. Plaintiff was 26 years old at the time of the administrative

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is automatically substituted as Defendant. Fed. R. Civ. P. 25(d).

decision, had a 12th grade education, and had past relevant work as a patient care assistant and as an office assistant. Plaintiff alleged disability due to obesity, lumbar degenerative disc disease, and an affective disorder. She asserted that her disability commenced on April 9, 2002.

Plaintiff elected to have her claim determined on the record without an administrative hearing. R. 20. Thus, there is no transcript of a hearing.

The Administrative Law Judge found that Plaintiff's obesity and lumbar degenerative disc disease are "severe" impairments at step 2, but do not meet or equal a listed impairment at step 3. At step 4, he determined that Plaintiff retains the residual functional capacity to do a full range of sedentary work, but cannot return to her past relevant work. At step 5, relying upon the "grids,"[2] he determined that Plaintiff was not disabled as defined by Social Security law.

Plaintiff contends that the ALJ erred by not finding at step 3 that her obesity coupled with pain met or equaled former Listing 9.09A, as construed by SSR 02-01p. Plaintiff also contends that the ALJ failed to give proper credit to her experience of pain.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[2] The Medical-Vocational Guidelines, 20 C.F.R. § 404.1569, and appendix 2 to subpart P.

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

     A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

>The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):
>
>1. Is the individual currently engaged in substantial gainful activity?
>
>2. Does the individual have any severe impairments?
>
>3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
>
>4. Does the individual have any impairments which prevent past relevant work?
>
>5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical Evidence**[3]

Plaintiff's obesity is well-documented.  She is 5 feet 4 inches tall and weighed 345 pounds on September 17, 2003.  R. 156.  She weighed 300 pounds on November 19, 2001, 336.5 pounds on November 5, 2002, 343 pounds on February 13, 2003, though she weighed 251.4 pounds on June 23, 2003.  R. 204, 164, 163, and 158.  Thus, it is undisputed that this medically determinable impairment has existed for a significant period.  Her primary impairment, however, is back pain as may be exacerbated by her weight.

Plaintiff went to the Shands Hospital Spine Care Clinic on November 19, 2001, and was seen by Carlos J. Placer, M.D.  R. 201-205.  Her chief complaint was lower back and left leg pain.  R. 205.  She said that walking and sitting aggravated her pain.  *Id*.  She said that pain prevented her from sitting for more than one-half hour.  *Id*.  Her current medication was Ibuprofen.  *Id*.  Her weight was 300 pounds.  R. 204.  Upon examination it was determined that Plaintiff had normal gait, could walk on her heels and toes, and the straight leg and Spurling's tests[4] were negative.  *Id*.  Pain was noted upon palpation in the left sacroiliac joint and left piriformis.  *Id*.  There was no deformity,

---

[3] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE (PDR), as available to the court on Westlaw.  Only the PDR 2005 and earlier are available to the court.  Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).

[4] This test is used for evaluation of cervical spine radiculopathy.  The patient laterally bends the neck to each side while maintaining a posture of cervical extension.  Pain intensified with ipsilateral bending strongly suggests a diagnosis of radiculopathy.  Pain with contralateral bending suggests musculo-ligamentous origin.  UNIVERSITY OF FLORIDA, COLLEGE OF MEDICINE, available at:
http://www.med.ufl.edu/rheum/rheumTests.htm

laxity, or weakness, however, in the cervical and lumbar spine, hips, knees, shoulders, or elbows.  *Id*.  Pain was reported with flexion of the lumbar spine and side bending.  *Id*.  The diagnosis was a sprain to the sacroiliac not otherwise specified (NOS) and a lumbar sprain.  R. 202.  Dr. Placer prescribed NSAIDs (nonsteroidal anti-inflammatory drugs), a muscle relaxant, and an exercise program (a lifetime lifestyle change).  *Id*.

Plaintiff returned on December 11, 2001.  R. 200.  She had been to physical therapy and complained of increased pain.  *Id*.  Straight leg raising was still negative bilaterally.  R. 199.  Dr. Placer said that Plaintiff was "capable of performing light duty on a full-time basis," with a change of positions every hour.  R. 197.

Plaintiff returned to Dr. Placer on January 3, 2002.  R. 196.  He released her to "fully duty" for four weeks.  R. 193.  On January 22, 2002, many of the tests performed by Dr. Placer were again normal.  R. 189-191.

On January 31, 2002, Plaintiff said that sitting for over 10 minutes was very painful.  R. 188.  She continued to work full-time in her job.  *Id*.  She weighed 297.8 pounds.  R. 187.  Again, most of the tests performed by Dr. Placer produced normal results, but with pain on side bending and lumbar flexion.  *Id*. and R. 186.  Dr. Placer said that Plaintiff was capable of performing light duty on a full-time basis.  R. 186.  His diagnosis continued to be pelvic joint pain and lumbar sprain.  R. 185-186.

Plaintiff was still working at her job on March 14, 2002, when she again was seen by Dr. Placer.  R. 184.  She said her pain was 10 on a scale of 10.  *Id*.  Again, a number of important tests were negative, but flexion, extension, and side bending of the lumbar spine produced pain.  R. 183.  X-rays revealed no evidence of fractures.  R. 182.  On April 29, 2002, the results of most of the clinical tests were again normal with some pain

on bending the lumbar spine.  R. 178-179.  On April 29, 2002, Dr. Placer also filled out a "work related activity form."  R. 232.  He said that Plaintiff could sit, stand, or walk for 6 hours a day, and could do each activity 60 minutes without interruption.  *Id.*  He said she could continually lift up to 10 pounds, and frequently lift up to 20 pounds.  *Id.*  He said that Plaintiff could not bend, squat, crawl, climb stairs, or climb ladders.  *Id.*  He noted that Plaintiff was currently unemployed.  *Id.*  He prescribed an exercise program and NSAIDs.  R. 233.

An MRI dated May 8, 2002, found disc protrusions at L3-L4 and L4-L5.  R. 176.  At L3-L4, there was "a focally protruding disk central and to the left side which compresses the left side of the thecal sac and potentially compresses the traversing left L4 nerve root."  *Id.*  It was further noted that "this disk has a degenerative signal loss with slight disk height loss."  *Id.*  At L4-L5, there was "a broad based, central disk protrusion at this level which minimally effaces the thecal sac but does not produce focal nerve root compression."  *Id.*  There was no foraminal narrowing, but here was degenerative signal loss with slight disc height loss.  *Id.*

On July 22, 2002, Plaintiff had an epidural injection of anesthetic at the L3-L4 level.  R. 170.  On September 23, 2002, Plaintiff was seen by Dr. Kalman.  R. 167.  With the exception, as before, of lumbar pain upon extension and side bending, the results of all of the other clinical tests were normal.  *Id.*  Plaintiff was seen again at the Spine Care clinic by Dr. Kalman on November 5, 2002.  R. 164-165.  She had recently had had an EMG,[5] the results of which were normal.  R. 164.

---

[5] Electromyography, that is, an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and

Dr. Kalman again saw Plaintiff on February 13, 2003.  R. 163.  Her weight was 343 pounds.  *Id.*  The seated straight leg raising test was positive for pain on the left side.  Her strength was intact in the lower extremities, she had normal ambulation, Spurling's test was negative, but her lumbar range of motion caused pain and she had pain upon palpation over the left S1 joint.  *Id.*  She reported that the pain went down her left leg.  *Id.*  Dr. Kalman's assessment was chronic low back pain, with signs of radiculopathy.  R. 162.  Another MRI was ordered.  *Id.*

On May 12, 2003, it was noted that the MRI showed "mild degenerative disk disease of L3-L4 and L4-L5."  R. 161.  Also, the MRI showed a "small central disk protrusion L4-L5 and moderate central disk extrusion L3-L4."  *Id.*  Upon examination, it was found that Plaintiff was able walk normally.  *Id.*  Straight leg raising and Spurling's test were normal bilaterally.  *Id.*  She had normal strength bilaterally in her lower extremities.  *Id.*  There was "tenderness" with palpation of the lower lumbar paraspinal area, but this time palpation did not reproduce pain going down her leg.  *Id.*

Plaintiff was seen by James W. Atchison, D.O., on September 17, 2003.  R. 156. Plaintiff complained of numbness, tingling, and left leg pain with weakness.  *Id.*  She weighed 345 pounds.  *Id.*  Dr. Atchison noted that her electrodiagnostic (EMG) studies were negative and her MRI scan revealed "only minimal degenerative changes."  *Id.* Dr. Atchison's assessment was chronic low back pain and chronic referred leg pain.  *Id.*

Plaintiff had a consultative mental health examination by Linda Abeles, Ph.D., on September 18, 2003.  R. 206-207.  Dr. Abeles's assessment was depressive disorder

---

during electrical stimulation.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

not otherwise specified.  R. 207.  On Axis V she assigned a GAF score of 76,[6] and said that "her current level of psychological functioning would not preclude her from obtaining or maintaining employment."  Id.

On October 1, 2003, Plaintiff was examined on a consultative basis by Robert Greenberg, M.D.  R. 208-210.  Dr. Greenberg said that Plaintiff's back pain had commenced in September, 2001, when she injured her lumbar spine lifting a patient.  R. 208.  She said she had been unable to return to her job since the injury.  Id.  Dr. Greenberg said that he "felt that this claimant was not putting forth full effort with regard to strength testing and ROM [range of motion] testing."  Id.  With that taken into consideration, he found that Plaintiff had lumbar pain climbing onto and off the examination table, without lumbosacral spasm.  R. 208-209.  There was a decreased range of motion of the lumbar spine, and decreased strength in the legs, bilaterally, measuring 4 out of 5.  R. 209.  Straight leg raising was positive for pain bilaterally at 15 degrees.  Id.  There was no evidence of active, inflammatory arthritis.  Id.  Gait and station were normal.  Id.  Dr. Greenberg's impression was chronic low back pain,

---

[6] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)." Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).  A score of 71-80 indicates very minor symptoms:

> If symptoms are present, they are transient and expectable reactions to psychosocial. stressors ( e.g., difficulty concentrating after family argument ); no more than slight impairment in social occupational, or school functioning ( e.g., temporarily falling behind in schoolwork ).

*See*, http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp, explaining Axis V and the scoring system.

probably secondary to lumbar disc disease. *Id.* He concluded that Plaintiff's only work limitation was to avoid "work-related activities that required heavy lifting or bending." *Id.*

On March 8, 2005, Plaintiff had another MRI scan. R. 312-313. The results show mild or minimal degenerative changes to Plaintiff's lumbar spine. There was "mild diffuse disk bulging" at L3-L4, without compromise of the foramina and "only mild effacement of the ventral thecal sac." R. 312. At L4-L5, there was also "mild diffuse disk bulging," with "mild effacement of [the] ventral thecal sac with early narrowing of the top of the left L5 lateral recess." *Id.* It was thought that this may "affect the descending left L5 root." *Id.* There was also "mild bilateral facet hypertrophy combining with the bulging disk to produce minimal foraminal stenosis." *Id.* At L5-S1, there was "minimal facet hypertrophy." *Id.*

On April 13, 2005, Plaintiff was examined by Wilda Murphy, M.D. R. 309-311. Dr. Murphy related that Plaintiff's injury occurred in 2001, and after "extensive" physical therapy and medications, Plaintiff's symptoms gradually subsided. R. 309. On December 4, 2004, the pain recurred. *Id.* Dr. Murphy found straight leg raising to be positive on both sides. R. 311. There was no tenderness upon palpation of the lower spine paraspinal and gluteal muscles. *Id.* Range of motion was functional except that pain was produced by flexion and extension. *Id.* Dr. Murphy's assessment was low back pain with radiculopathy. *Id.* Weight loss, home exercises, and an injection were recommended. *Id.*

On May 9, 2005, Plaintiff had an NCS (nerve conduction study) and another EMG. R. 320. Plaintiff had functional range of motion in all extremities except for limitation of back movement due to weight and pain. *Id.* The results of the nerve

conduction and EMG studies were normal.  R. 321.  Plaintiff had an epidural injection on May 31, 2005.  R. 317-318.

On October 6, 2005, Plaintiff was seen by Eric M. Gabriel, M.D., for a neurosurgical consultative examination at the request of Dr. Murphy.  R. 330-334.  While Plaintiff said that her pain was 10 on a scale of 10, Dr. Gabriel found that Plaintiff's "maximum duration for sitting is unlimited," though he thought that Plaintiff's maximum time for standing was limited to 30 minutes.  R. 330.  Dr. Gabriel noted that Plaintiff had taken NSAIDs, pain medications, muscle relaxers, which provided relief but no resolution of her symptoms.  *Id.*  Her weight was 290 pounds.  R. 331.  Dr. Gabriel observed that Plaintiff sat "uncomfortably and [was] constantly moving during the patient interview."  *Id.*  He found that Plaintiff's motor strength was intact in all extremities, "with normal tone and mass."  R. 332.  Straight leg raising was negative to 90 degrees with no pain in the right, and to 90 degrees with pain on the left.  R. 333.  Dr. Gabriel's diagnosis was chronic left lower extremity radiculopathy.  *Id.*  He did not think Plaintiff was a good candidate for surgery and recommended continued conservative treatment.  *Id.*

**Legal Analysis**

>**Whether the ALJ erred at step 3 by failing to find that Plaintiff's obesity and spinal impairments, in combination, did not meet or equal a Listed impairment**

Plaintiff contends that the ALJ erred at step 3 by not finding that her obesity coupled with her experience of pain met or equaled a Listed impairment[7] as construed by Social Security Ruling 02-01p.[8] Plaintiff does not specify which Listing or provide much substantive argument for this point.

The Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be made at step 3 without considering the claimant's age, education, and work experience. 20 C.F.R. § 1520(d).

> The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990) (emphasis by the Court). The claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891.

---

[7] The Listings can be found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap10.htm

[8] This ruling is attached to document 15. Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891 (emphasis by the Court).  However, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531, 110 S.Ct. at 892.  Nonetheless, at least where the Listing itself is defined "in terms of functional criteria," the "regulations . . . require that an ALJ consider the combined effects of impairments when deciding whether impairment(s) 'equal' a listed impairment." Davis v. Shalala, 985 F.2d 528, 532, citing 20 C.F.R. §§ 404.1526(a) and 416.926(a), and 533 (11th Cir. 1993).

> In order to equal a listing, the medical findings must be at least equal in severity and duration to the listed findings.  If a claimant has more than one impairment and none of his impairments meet or equal a listed impairment, the Secretary reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination of impairments is medically equal to any listed impairment. 20 C.F.R. 416.926(a).  When deciding medical equivalence, the Secretary must consider the medical opinion of one or more designated physicians on an advisory basis.  *Id.*, at § 416.926(b).

Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

Listing 9.09 (Obesity) was deleted on October 25, 1999.  64 Fed. Reg. 46122 (1999), cited in SSR 02-01p.  Obesity still, however, may be a medically determinable impairment that should be considered in making a determination of disability at all steps, and this is reflected in changes to a number of other Listings.  SSR 02-01p.  Social Security Ruling 02-01p provides guidance about how to evaluate obesity.  *Id.*  Obesity

may "meet" the requirements of a listed impairment if there is another impairment that, in combination with obesity, meets the requirements of a listing, or if a combination of impairments, including obesity, is equal to a listed impairment. *Id.*, ¶ 7. This may occur if obesity increases the severity of related impairments so that the combination meets a listing. *Id.*, ¶ 7.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.*, ¶ 8.

The closest listed impairment matching Plaintiff's experience of lumbar pain is Listing 1.04, Disorders of the Spine. Listing 1.04 provides:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> >
> > or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> >
> > or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable

> imaging, manifested by chronic nonradicular pain *and* weakness, *and* resulting in inability to ambulate effectively, as defined in 1.00B2b.

(Emphasis added.)

Listing 1.04A requires medical evidence of a limitation of motion of the spine, motor loss with muscle weakness or atrophy, sensory or reflex loss, *and* positive straight-leg raising test. The evidence discussed above shows that Plaintiff did have some limitation of the motion of her spine due to her weight and pain. But Plaintiff did not have muscle weakness or atrophy, sensory or reflex loss, and usually was negative on straight-leg raising. Therefore, Listing 1.04A has not been met because Plaintiff has not presented "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891.

Listing 1.04C does not apply because there was no significant evidence that Plaintiff cannot "ambulate effectively." Consequently, the Administrative Law Judge's determination that Plaintiff's impairments, in combination, did not meet or equal a Listed impairment, is supported by substantial evidence in the record.

### Whether the ALJ gave proper weight to Plaintiff's subjective pain evidence

Plaintiff contends that the reasons given by the Administrative Law Judge for discrediting her complaints of pain are not supported by substantial evidence in the record. Plaintiff did not testify since she waived an administrative hearing. Her subjective descriptions of the level of pain she experiences, however, are in the written record. R. 129-132.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's pain standard if his findings "leave no doubt as to the appropriate result" under the law. Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The ALJ found Plaintiff's "allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." R. 26. The evidence in the body of the decision is substantial evidence in the record to determine that Plaintiff's pain does not preclude her from doing sedentary work. The two MRI scans showed mild degenerative spinal changes. This is evidence from which one reasonably might conclude that Plaintiff suffers some pain. But there was very little evidence of radicular

pain.  The EMG and nerve conduction velocity tests were negative.  Treating physicians repeatedly found no loss of strength or muscle atrophy in the lower extremity, and straight leg raising and Spurling's tests were usually negative.  Plaintiff's ability to flex and bend at the lower spine was impaired, with pain produced, but this would not preclude sedentary work.  Dr. Greenberg felt that Plaintiff could do any work except work involving heavy lifting.  A treating physician, Dr. Placer, released Plaintiff to light duty.  Finally, there was evidence that from about 2002 to late in 2004, Plaintiff said that her pain had abated and then began again on December 4, 2004.  The ALJ's determination not to credit Plaintiff's pain allegations is supported by substantial evidence in the record.

Plaintiff also argues that the ALJ should have contacted Plaintiff's treating physicians and obtained evidence as to her ability to sit and stand in combination in an 8 hour day.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record."  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

Where there is an ambiguity in the treating physician's records or opinion, the Administrative Law Judge should take steps to clarify it:

> Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or

>treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000).  The Commissioner's regulations provide that if "the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled,"

>[w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available.  *We will seek additional evidence or clarification from your medical source when the report from our medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.*  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e)(1) (emphasis added).  *See also*, Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("One of our recent opinions confirms, moreover, that an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.")).

There were no evidentiary gaps in the record here.  The medical records and findings from treating physicians were rather extensive.  The treating physicians conducted clinical tests, obtained MRI's, and expressed opinions as to Plaintiff's ability to do work-related physical activity.  Had it been useful for there to have been a more current opinion from a treating physician about Plaintiff's ability to do work with a sit or

stand option, it was Plaintiff's burden to come forward with the evidence. The ALJ cannot be faulted here for failing to seek such additional evidence.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record. The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 18, 2007.


          s/    William C. Sherrill, Jr.
          WILLIAM C. SHERRILL, JR.
          UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**